**SCHUMACHER TRADING PARTNERS II, Marion G. Bond, Jr. and Rebecca C. Bond, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 05–380T.**

United States Court of Federal Claims.

July 31, 2006.

Larry A. Campagna, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, Texas, for Plaintiffs.

David R. House, United States Department of Justice, Washington, D.C., for Defendant.

### MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

On October 22, 2004, the Internal Revenue Service ("IRS") issued a Notice of Final Partnership Administrative Adjustment ("FPAA"), pursuant to 26 U.S.C. § 6223, to the Schumacher Trading Partners II partnership. Plaintiffs filed this action to contest this adjustment.

The parties' cross-motions for summary judgment require the court to interpret a provision of the Internal Revenue Code, 26 U.S.C. § 6229(a), and determine whether the FPAA was issued within the time period during which Congress authorized the IRS to adjust a partnership return and proceed against the partners for the tax consequences of that adjustment. For the reasons discussed herein, the court has determined that the IRS was not barred from making an adjustment to the partnership return at issue in this case.

An outline of this Memorandum Opinion and Order follows:

I. BACKGROUND AND RELEVANT FACTS.
  A. The Schumacher Trading Partners II Partnership.
    1. Taxable Period From January 1, 2000 To October 23, 2000.
    2. Taxable Period From October 24, 2000 To December 23, 2000.
  B. The Sage Valley Trading Partners Partnership.
  C. The October 22, 2004 Notice Of Final Partnership Administrative Adjustment.
II. PROCEDURAL HISTORY.
III. DISCUSSION.
  A. Jurisdiction Of The United States Court Of Federal Claims To Review A Final Partnership Administrative Adjustment.
  B. Standard For Decision On Summary Judgment—RCFC 56(c).
  C. The Tax Equity And Fiscal Responsibility Act Of 1982.
  D. The Parties' Motions.
    1. Plaintiffs' Motion For Summary Judgment.
    2. Government's Cross–Motion For Summary Judgment.
  E. Prior Constructions Of 26 U.S.C. § 6229(a) By The United States Court Of Federal Claims.
  F. The Court's Determination Regarding The Cross–Motions For Summary Judgment.
    1. The Plain Language Of 26 U.S.C. § 6229(a) Extends The Limitations Period Set Forth In 26 U.S.C. § 6501(a) For The Assessment Of Taxes Attributable To A Partnership Item.
    2. The Legislative History Does Not Contradict The Plain Language of 26 U.S.C. § 6229(a).
IV. CONCLUSION.

* * *

## I. BACKGROUND AND RELEVANT FACTS.[1]

### A. The Schumacher Trading Partners II Partnership.

In November 2000, Plaintiff Marion G. Bond, Jr. took a short position in U.S. Treasury Notes. *See* Pls. Resp. to Gov't PFF ¶ 1.[2] Later that same month, Mr. Bond became a "notice partner" of the Schumacher Trading Partners II ("the Schumacher Partnership"). *See* Pls. Resp. to Gov't PFF ¶ 2.[3] Therein, Mr. Bond contributed, and Schumacher Partnership assumed, $499,382.24 in cash and the short position in U.S. Treasury Notes of $5,011,000.00. *Id.*

During the 2000 calendar year, the Schumacher Partnership had a taxable period from January 1, 2000 to October 23, 2000 and another taxable period from October 24, 2000 to December 23, 2000. *See* Gov't Resp. to Pls. PFF ¶ 2.[4]

On November 29, 2000, the Schumacher Partnership closed out the short position in U.S. Treasury Notes that Mr. Bond had contributed. *See* Pls. Resp. to Gov't PFF ¶ 3. In December 2000, the Schumacher Partnership was terminated and Mr. Bond received a distribution of partnership assets, including 571 shares of Lucent Technologies stock and 22,591 units of Canadian Dollars. *Id.* ¶¶ 4–5.

On June 11, 2001, the IRS granted the Schumacher Partnership an automatic extension of time to file the two tax returns for the 2000 calendar year through July 15, 2001. *See* Gov't Resp. to Pls. PFF ¶ 3.

### 1. Taxable Period From January 1, 2000 To October 23, 2000.

On July 16, 2001, the Schumacher Partnership mailed a Form 8800, an Application for Additional Extension of Time to File U.S. Return for a Partnership ("Application for Extension of Time"), to the IRS for the taxable period ending October 23, 2000. *Id.* ¶ 4. By August 2, 2001, the IRS stamped "approved" on the Application for Extension of Time for the period ending October 23, 2000, extending the time to file that return through August 15, 2001. *Id.* ¶ 5. On October 16, 2001, the IRS received the Schumacher Partnership's Form 1065, Return of Partnership Income ("Partnership Return"), for the taxable period ending October 23, 2000. *Id.* ¶ 8.

### 2. Taxable Period From October 24, 2000 To December 23, 2000.

On July 16, 2001, the Schumacher Partnership also mailed an Application for Extension of Time to the IRS for the taxable period ending December 23, 2000. *Id.* ¶ 6. Thereafter, the IRS returned the Application for Extension of Time for the period ending December 23, 2000 to the Schumacher Part-

---

1. The facts recited herein were derived from: Plaintiffs' March 18, 2005 Complaint ("Compl.") and Exhibit A attached thereto; Plaintiffs' November 7, 2005 Motion for Summary Judgment ("Pls.Mot."), together with a Memorandum in Support ("Pls.Mem.") and Proposed Findings of Fact ("Pls.PFF"); the Government's December 22, 2005 Cross–Motion for Partial Summary Judgment and Opposition to Plaintiffs' Motion ("Gov't Cross–Mot."), together with a Memorandum in Support ("Gov't Mem.") and Proposed Findings of Fact ("Gov't PFF"); the Government's December 22, 2005 Response to Plaintiffs' Proposed Findings of Fact ("Gov't Resp. to Pls. PFF"); Plaintiffs' February 24, 2006 Reply and Response ("Pls.Reply"); and Plaintiffs' February 24, 2006 Response to the Government's Proposed Findings of Fact ("Pls. Resp. to Gov't PFF"); the Government's March 21, 2006 Reply ("Gov't Reply").

2. When an investor perceives that interest rates will rise in the future, the investor might take a short position in U.S. Treasury Notes in order to profit from the declining price of the U.S. Treasury Notes. *See* JOEL G. SIEGEL & JAE K. SHIM, DICTIONARY OF ACCOUNTING TERMS, at 394 & 399 (3rd

ed.2000) (defining "selling short" and "short account"). An investor, typically, assumes a deficit position with a broker, but eventually is required to cover the position. *Id.*

3. On October 22, 2004, the IRS determined that "the [Schumacher] Partnership was availed of for the purposes of evading taxes, was entered into without a motive for making a profit, and was a factual and economic sham." Gov't Resp. to Pls. PFF ¶ 1. The Government maintains that "discovery into those issues" is required prior to proceeding to the merits of this case. *Id.* For the purposes of the pending cross-motions for summary judgment, however, the parties agree that the question of whether a viable partnership existed is not material. *Id.; see also* Pls. Resp. to Gov't PFF ¶ 2 n. 3.

4. The parties dispute whether the Schumacher Partnership was a single partnership with two taxable periods in 2000 or two separate partnerships with the same name and tax identification number for taxable year 2000. *Compare* Gov't Resp. to Pls. PFF ¶ 2, *with* Pls. Reply at 3. The court, however, need not address that issue at this time.

nership, stapled to the Application for Extension of Time for the taxable period ending October 23, 2000. *Id.* ¶ 7. The Application for Extension of Time for the taxable period ending December 23, 2000, however, was not marked with any disposition, *e.g.*, "approved," or "disapproved," or other comment. *Id.* On October 15, 2001, the Schumacher Partnership mailed a Partnership Return to the IRS for the taxable period ending December 23, 2000. *Id.* ¶ 9. The IRS received that Partnership Return on October 23, 2001. *Id.* ¶ 10.

### B. The Sage Valley Trading Partners Partnership.

On December 27, 2000, Sage Valley Trading Partners ("the Sage Valley Partnership") was formed with Mr. Bond as the General Partner. *See* Pls. Resp. to Gov't PFF ¶ 6. The Sage Valley Partnership acquired the shares and currency that Mr. Bond received from the distribution of the Schumacher Partnership assets, *i.e.*, Lucent Technologies stock with a stated value of $2,009,457.00 and Canadian Dollar units with a stated value of $3,014,091.00. *Id.* ¶¶ 7–8. The basis of the Sage Valley Partnership in the Lucent Technologies stock and the Canadian Dollars was the basis that Mr. Bond claimed in his partnership interest in the Schumacher Partnership. *Id.* ¶ 9. The Government contests that the basis was "artificially high" and resulted from a "Son of BOSS transaction." *See* Gov't PFF ¶ 9.[5] Plaintiffs disagree with the Government's characterization. *See* Pls. Resp. to Gov't PFF ¶ 9.

The Sage Valley Partnership Return for the year ending December 31, 2001 indicated that the Sage Valley Partnership sold some of the Canadian Dollar units, reporting a $182,231.00 loss. *Id.* ¶ 10. At least part, if not all, of this reported loss resulted from the basis that Sage Valley Partnership carried over from Mr. Bond's interest in the Schumacher Partnership. *Id.* ¶ 11. The Partner-

ship Return for the year ending December 31, 2001 also indicated that 40 shares of Lucent Technologies stock, contributed by Mr. Bond, were sold. *Id.* ¶ 12. The Partnership Return for the year ending December 31, 2001 reported a $140,577.00 loss from this transaction. *Id.* At least part, if not all, of this reported loss resulted from the basis that the Sage Valley Partnership carried over from Mr. Bond's interest in the Schumacher Partnership. *Id.* ¶ 13.

On the Sage Valley Partnership's Partner's Share of Income (Loss) From an Electing Large Partnership ("Schedule K–1"), Mr. Bond's portion of the loss from the sale of Canadian Dollars was reported as an ordinary loss of $180,409.00. *Id.* ¶ 14. The Schedule K–1 also reported Mr. Bond's share of the net short-term capital loss to be $367,369.00, which included the short-term loss from the sale of the Lucent Technologies stock. *Id.* Mr. Bond and Ms. Rebecca C. Bond (collectively "the Bonds") in turn reported their share of the losses on a Form 1040, U.S. Individual Income Tax Return ("Individual Tax Return") for the year ending December 31, 2001, which was filed in August 2002. *Id.* ¶¶ 15–16.

The Sage Valley Partnership Return for the year ending December 31, 2002 indicated that 645 additional shares of Lucent Technologies stock were sold, reporting a $1,868,045.00 long-term capital loss. *See* Decl. of David R. House, Ex. 5, at 10; *see also id.* ¶ 17. At least part, if not all, of this reported loss resulted from the basis that the Sage Valley Partnership carried over from Mr. Bond's interest in the Schumacher Partnership. *See* Pls. Resp. to Gov't PFF ¶ 18.

By the end of the 2002 calendar year, Ms. Bond also was elected as a Limited Partner of the Sage Valley Partnership. *Id.* ¶ 19. The Sage Valley Partnership reported Ms. Bond's share of the partnership's net long-term capital loss in 2002 as $1,848,136.00, which was included the long-term loss from the sale of Lucent Technologies stock. *Id.*

The Bonds' Individual Tax Return for the year ending December 31, 2002, filed in April

---

5. On June 25, 2003, the IRS issued Notice 2000–44, 2000 WL 1138430, identifying "Son of Boss" transactions. *See* Notice 2000–44, Son of Boss Tax Shelter (CC–2003–020), Dep't of the Treasury: Internal Revenue Serv., Office of Chief Counsel (June 25, 2003), *available at* http://www.irs.gov/pub/irs-utl/ccn—2003–20—(notice—2000–44).pdf (last visited July 31, 2006). The Notice explained

that a short-sale obligation contributed after October 18, 1999, but prior to June 24, 2003 was "a liability that reduces the basis in the partnership of the partner who contributed the liability, to the extent of the amount of the liability but not below the adjusted value of the partner's interest." *Id.* at 5.

2003, reported a long-term capital loss of $1,700,103.00, of which part, if not all, resulted from the Sage Valley Partnership's sale of the Lucent Technologies stock. *Id.* ¶¶ 20–22.

### C. The October 22, 2004 Notice Of Final Partnership Administrative Adjustment.

On October 22, 2004, the IRS issued a FPAA that proposed an adjustment to the partnership items of the Schumacher Partnership for the taxable period ending December 23, 2000. *Id.* ¶¶ 23 –24; *see also* Gov't Resp. to Pls. PFF ¶ 11. According to the FPAA, the Schumacher Partnership's closing of the short position in U.S. Treasury Notes was a discharge of Mr. Bond's liability to cover that position and a distribution of cash under the Internal Revenue Code, that reduced Mr. Bond's basis in the Schumacher Partnership by the amount of the liability discharged. *See* Pls. Resp. to Gov't PFF ¶ 24. The FPAA required that Mr. Bond's basis in the Schumacher Partnership be reduced, causing the loss that the Bonds reported for the 2001 and 2002 taxable years to be reduced. *Id.* ¶ 25.

According to the Government, the IRS intends to assess the Bonds for taxes due in the 2001 and 2002 taxable years that are attributable to the adjustment proposed in the FPAA. *See* Gov't Mem. at 12.

### II. PROCEDURAL HISTORY.

On March 18, 2005, Plaintiffs filed a Complaint in the United States Court of Federal Claims seeking: "a redetermination of the FPAA to remove all adjustments to income, losses, distributions, basis, and penalties … [and] "recovery of $4,499 in taxes deposited, plus any interest permitted by law[.]" Compl. at 6–7 (Prayer). On June 18, 2005, the Government filed an Answer.

On November 7, 2005, Plaintiffs filed a Motion for Summary Judgment asserting that, as a matter of law, the adjustment is barred, because the FPAA was issued after the applicable statute of limitations expired. *See* Pls. Mot. at 2. On that date, Plaintiffs also filed a Memorandum in Support, together with Proposed Findings of Fact. On November 9, 2005, Plaintiffs filed the Declaration of Mr. Sean Muller, a General Partner of the Schumacher Partnership, by leave of the court.

On December 22, 2005, the Government filed a Cross–Motion and Response to Plaintiffs' November 7, 2005 Motion for Summary Judgment, together with the Declaration of Mr. David R. House, Esq., United States Department of Justice, Counsel for the Government. According to the Government, the FPAA was issued timely, within three years of the date that the Bonds filed their Individual Tax Returns for the taxable years, in which the allegedly improper deductions were reported and used by the Bonds. On December 22, 2005, the Government also filed a Proposed Findings of Fact, as well as a Response to Plaintiffs' Proposed Findings of Fact.

On February 24, 2006, Plaintiffs filed a Reply and Response to the Government's Cross–Motion, as well as a Response to the Government's Proposed Findings of Fact. On March 21, 2006, the Government filed a Reply.

### III. DISCUSSION.

### A. Jurisdiction Of The United States Court Of Federal Claims To Review A Final Partnership Administrative Adjustment.

The United States Court of Federal Claims has jurisdiction to review a Notice of Final Partnership Administrative Adjustment. *See* 28 U.S.C. § 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 or 6228(a) of the Internal Revenue Code of 1986."); *see also* 26 U.S.C. § 6226(f) (defining the scope of the United States Court of Federal Claims' jurisdiction, pursuant to 28 U.S.C. § 1508, as: "jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item").

Congress has defined a "partnership item" as: "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). The Treasury Regulations explain that the term "partnership item" includes "[t]he partnership aggregate and each partner's share of ... [i]tems of income, gain, loss, deduction, or credit of the partnership." 26 C.F.R. § 301.6231(a)(3)-1(a)(1).

To invoke the court's jurisdiction to review a FPAA, however, the partner filing the petition must first deposit, with the Secretary of the Treasury, the amount of the tax liability at issue if the partnership items are reconciled in accordance with the FPAA. *See* 26 U.S.C. § 6226(e). In this case, the Complaint alleges, and the Government admits, that Plaintiffs deposited $4,499.00 with the IRS on March 17, 2005. *See* Compl. ¶ 9; Answer ¶ 9. The Complaint further alleges, and the Government does not dispute, that the aforementioned deposit represents the amount by which Plaintiffs' tax liability would be increased. *Id.; see also* Compl. ¶ 10.

### B. Standard For Decision On Summary Judgment—RCFC 56(c).

Summary judgment is "only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.2005); *see also* RCFC 56(c). In the United States Court of Federal Claims, summary judgment, albeit "interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." RCFC 56(c); *see also United States v. Winstar Corp.,* 518 U.S. 839, 910, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (affirming grant of partial summary judgment on contract liability and remanding the determination of the appropriate measure or amount of damages, if any). Only genuine disputes of mate-

rial facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48, 106 S.Ct. 2505. Therefore, there is no issue for the court to adjudicate unless the nonmoving party puts forth evidence sufficient for a jury to return a verdict for that party; but "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

The burden of demonstrating the absence of any genuine issue of material fact is on the party moving for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the moving party may meet its burden "by 'showing'—that is, pointing out to the [trial court]—that there is an absence of evidence to support the nonmoving party's case."). A motion for summary judgment may be made without supporting affidavits and rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324, 106 S.Ct. 2548 (internal quotation & citation omitted). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed.Cir.2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."). A dispute over a

material fact is "genuine" where a reasonable fact-finder could find for the nonmovant. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A trial court is required to resolve all doubt over factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In doing so, all reasonable inferences and presumptions must be resolved in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed.Cir. 2000) ("When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be ·credited, and all justifiable inferences are to be drawn in the nonmovant's favor."); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed.Cir.1995) (requiring the trial court to view the evidence in a light most favorable to the non-moving party and to draw all reasonable inferences in favor of the non-moving party).

In the present case, the facts relevant to Plaintiffs' Motion for Summary Judgment and the Government's Cross–Motion for Summary Judgment are undisputed. Therefore, the court is presented an issue of law upon which summary judgment may be rendered.

## C. The Tax Equity And Fiscal Responsibility Act Of 1982.

The Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, 648–71, § 402 (Sept. 3, 1982) (codified, in part, at 26 U.S.C. §§ 6221–32) ("TEFRA"), was "enacted to 'improve the auditing and adjustments of income tax items attributable to partnerships.' " *Weiner v. United States,* 389 F.3d 152, 154 (5th Cir.2004) (quoting *Alexander v. United States,* 44 F.3d 328, 330 (5th Cir.1995)).

Prior to the passage of TEFRA, adjustments of an individual partner's tax liability were determined at the individual partner's level. *See Callaway v. Comm'r,* 231 F.3d 106, 107 (2d Cir.2000). This often led to inconsistent treatment between partners of the same partnership, *e.g.,* in order to secure

an extension of the statute of limitations, the IRS had to obtain consent from each individual partner, not the partnership. *Id.* at 107–08 (citing *Randell v. United States,* 64 F.3d 101, 103 (2d Cir.1995)).

As the United States Court of Appeals for the Third Circuit, in *Rhone–Poulenc Surfactants & Specialties, L.P. v. Commissioner,* 249 F.3d 175 (3d Cir.2001), explained:

> The TEFRA partnership provisions were enacted in 1982 in response to the mushrooming administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners. Under these procedures, the tax treatment of partnership items is determined at the partnership level in a unified partnership proceeding rather than in separate proceedings for each partner.

*Id.* at 178 (quoting *Boyd v. Comm'r,* 101 T.C. 365, 368–69, 1993 WL 452248 (1993)).

In enacting TEFRA, Congress required the treatment of all "partnership items" to "be determined at the partnership level." 26 U.S.C. § 6221; *see also Weiner,* 389 F.3d at 154 ("TEFRA requires the treatment of all partnership items to be determined at the partnership level."); *In re Crowell,* 305 F.3d 474, 478 (6th Cir.2002) ("TEFRA created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level."); *Callaway,* 231 F.3d at 108 (same). Under the current law, the partnership is not subject to federal income taxes, but is treated as a conduit to a taxable entity. *See* 26 U.S.C. §§ 701, 702 ("A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities."). Therefore, a partnership is required to file informational returns, *i.e.,* a Schedule K–1, reflecting the distributive shares of income, gains, deductions, and credits attributable to the partners. *See Weiner,* 389 F.3d at 154 (citing *Kaplan v. United States,* 133 F.3d 469, 471 (7th Cir.1998) ("Partnerships ... must file annual reports of the partners' distributive

shares of income, gains, deductions, and credit; the partners are taxed in their individual capacities based on these calculations.")). Individual partners are then responsible for reporting their pro rata share of income, gains, deductions, and credits on their income tax returns. *Id.; see also* 26 U.S.C. § 6222(a) ("A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return."); 26 U.S.C. § 701 ("Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.").

Should the IRS decide to adjust a "partnership item," the IRS must first notify the individual partners of an adjustment by issuing a FPAA. *See* 26 U.S.C. §§ 6223(a), 6225 (requiring the IRS to issue a Notice of a Final Partnership Administrative Adjustment to the partnership before the IRS may assess a deficiency attributable to any partnership item); *see also Kaplan*, 133 F.3d at 471 ("TEFRA ... establish[es] procedures for disseminating information regarding the taxation of partnership items.... I.R.S. must provide notice to each partner of any adjustments to partnership items. This notice takes the form of a final partnership administrative adjustment (FPAA), which details the I.R.S.'s approval or rejection of the partnership's claims of taxable income and deductions."). The issuance of a FPAA with respect to any taxable year suspends the three year period for assessing any tax attributable to a partnership item. *See* 26 U.S.C. § 6229(d). Additional tax liability may be assessed for one year after the IRS completes the partnership adjustment. *Id.*

Only the partner designated by the partnership as the "tax matters partner," however, has the exclusive right to challenge a FPAA, by filing a petition for readjustment of the "partnership items," either in the United States Tax Court, the United States Court of Federal Claims, or a United States District Court within ninety days of the issuance of a FPAA. *See* 26 U.S.C. § 6226(a); *see also* RCFC, App. F (setting forth the special provisions that apply to actions in the United States Court of Federal Claims under 26

U.S.C. § 6226). If the "tax matters partner" does not file a petition within the requisite period, other partners are afforded an additional sixty days to file a petition for readjustment. *See* 26 U.S.C. § 6226(b)(1). Any partner whose tax liability might be affected by the outcome of the litigation of partnership items has standing to participate in the proceeding. *See* 26 U.S.C. §§ 6224(a), (c). Section 6226(c), however, binds all partners to a final decision of any such challenge. *See* 26 U.S.C. § 6226(c).

### D. The Parties' Motions.

Resolution of the pending cross-motions requires the court to construe the limitation periods set forth in 26 U.S.C. § 6229(a) and 26 U.S.C. § 6501(a).

Section 6229(a) of Title 26 of the United States Code provides:

*Except as otherwise provided in this section,* the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

26 U.S.C. § 6229(a) (emphasis added).

Section 6501(a) of Title 26 of the United States Code provides:

*Except as otherwise provided in this section,* the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer

(and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

26 U.S.C. § 6501(a) (emphasis added).

### 1. Plaintiffs' Motion For Summary Judgment.

Plaintiffs argue that, because the October 22, 2004 FPAA was issued more than three years after the filing of the Schumacher Partnership's October 15, 2001 Partnership Return, the FPAA is barred by the limitations set forth in 26 U.S.C. § 6229(a). *See* Pls. Mem. at 5; *see also* Pls. Reply at 8 ("[T]he enactment of Section 6229 recognized that it provides *the* separate, special, exclusive, and final partnership-specific period of limitations attributable to partnership items, that it supersedes the general limitations period (Section 6501), and that, upon expiration, it fixes those partnership items as FINAL.").

### 2. Government's Cross–Motion For Summary Judgment.

The Government counters that the October 22, 2004 FPAA was timely issued, because the three-year limitations period, set forth in 26 U.S.C. § 6229(a), "was open for the IRS to assess taxes against the Bonds for 2001 and 200[2][sic]—years in which the losses from the tax shelter were reported by the Bonds on their individual [tax] returns." Gov't Mem. at 8; *see also id.* at 11–31. According to the Government, the IRS had until August 2005 and April 2006 before the three-year limitations period for assessing taxes with respect to the Bonds' 2001 and 2002 taxable years expired. *Id.* at 9.

The Government construes 26 U.S.C. § 6229(a) to establish a minimum period within which the IRS may assess taxes attributable to a partnership item, pursuant to 26 U.S.C. § 6501. *Id.* at 9, 13–15 ("[T]he plain language of § 6229(a) provides a safe harbor period within which the general § 6501 period *shall not expire....* Thus, § 6229 acts as a possible extension of the general § 6501 period."). Section 6229(a), however, does not impose a maximum period of limitations. *Id.*

### E. Prior Constructions Of 26 U.S.C. § 6229(a) By The United States Court Of Federal Claims.

The United States Court of Federal Claims recently has considered whether 26 U.S.C. § 6229(a) extends the limitations period for assessing taxes set forth in 26 U.S.C. § 6501(a) as to "partnership items" or whether the period set forth in 26 U.S.C. § 6229(a) is a separate statute of limitations requiring issuance of a FPAA within three years of the date of filing of a partnership return.

In *AD Global Fund, LLC v. United States*, 67 Fed.Cl. 657 (Fed.Cl.2005), *appeal docketed*, No. 06–5046 (Fed.Cir. Jan. 13, 2006), the Honorable Christine O.C. Miller determined that 26 U.S.C. § 6229(a), interpreted within the framework of TEFRA, was ambiguous and that the legislative history was not helpful in construing this statute. *Id.* at 673–91; *see also id.* at 663 (identifying Congress' "imprecision in structuring" 26 U.S.C. § 6229: "Language denoting an extension of a period of limitations is seeded with repeated phrases that denote the creation of a separate, fully contained and integrated statute of limitations for partnership items."). Since ambiguities concerning the limitations of a tax collection statute should be construed in favor of the Government, Judge Miller held that an FPAA was timely issued. *Id.* at 691–94; *see also id.* at 694 ("While the court regrets that poor drafting may have concealed Congress's intent, the evidence presented is not certain enough to overcome the strong presumption in favor of allowing the Government to collect the taxes owed to it. Therefore, section 6229(a) is held to contain an extension of time, not a separate statute of limitations on partnership items.").

Subsequently, Judge Miller issued an Order certifying Plaintiffs' request for interlocutory review. *See AD Global Fund, LLC v. United States*, 68 Fed.Cl. 663, 666 (Fed.Cl. 2005) ("Paragraph 1 of the court's September 16, 2005 opinion and order is amended, as follows: Plaintiff's motion for summary judgment is denied. Because a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ulti-

mate termination of the litigation, the court certifies the issue to the United States Court of Appeals for the Federal Circuit for its consideration whether to permit an appeal to be taken from such order should a timely application be made to that court."). On January 9, 2006, the United States Court of Appeals for the Federal Circuit granted AD Global Fund's petition to appeal. *Ad Global Fund, LLC v. United States,* 167 Fed.Appx. 171, 172, 2006 WL 171766, at *2 (Fed.Cir. Jan.9, 2006). The appeal, Case No. 06–5046, is pending and, as of this date, has not been set for oral argument.

Last month, in *Grapevine Imports, Ltd. v. United States,* 71 Fed.Cl. 324 (2006), the Honorable Francis M. Allegra reached the same conclusion as Judge Miller, but determined that "the language in [26 U.S.C. § ] 6229(a) is susceptible of a straight-forward textual exegesis." *Id.* at 329; *see also id.* at 338 ("[W]hile the statute undoubtedly could be clearer, the issue here still comes down to a much more staunch interpretative rule, one that is applicable to all forms of federal legislation, even taxing acts—the plain, obvious and rational meaning of a statute is always to be preferred." (internal quotations & citations omitted)). Accordingly, Judge Allegra held that 26 U.S.C. § 6229(a) is "a minimum period, not an independent limitations period exclusive of [26 U.S.C. § ] 6501." *Id.* at 329 ("The conclusion that section 6229(a) is a minimum period, not an independent limitations period exclusive of section 6501, flows from statutory language indicating that the period for assessing a tax under subtitle A of the Code 'shall not expire before.' " (alteration in original)).

## F. The Court's Determination Regarding The Cross–Motions For Summary Judgment.

### 1. The Plain Language Of 26 U.S.C. § 6229(a) Extends The Limitations Period Set Forth In 26 U.S.C. § 6501(a) For The Assessment Of Taxes Attributable To A Partnership Item.

Section 6501(a), as a general matter, requires the IRS to assess income tax within three years after a tax return is filed. *See* 26 U.S.C. § 6501(a). The limitations period therein applies to *any* tax imposed by Title 26 of the United States Code. *Id.* (emphasis added). Moreover, as the United States Court of Appeals for the Federal Circuit explained, in *Computervision Corp. v. United States,* 445 F.3d 1355 (Fed.Cir.2006): "Statutes of limitations play an important role in tax administration, benefitting both the government and taxpayers. The government's authority to assess taxes is limited by 26 U.S.C. § 6501, under which taxes must be assessed within three years of the filing of the return." *Id.* at 1362.

Statutory interpretation begins with the language, or plain meaning, of the statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 2626, 162 L.Ed.2d 502 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."); *Comm'r v. Engle,* 464 U.S. 206, 214, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984) (explaining that, in construing a provision of the Internal Revenue Code, *i.e.,* 26 U.S.C. § 613A, "[o]ur starting point, of course, is the language of the statute itself."); *Fed. Nat'l Mortgage Ass'n v. United States,* 379 F.3d 1303, 1307 (Fed.Cir.2004) ("[S]tatutory interpretation begins with the language of the statute.") (citing *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)). The United States Court of Appeals for the Federal Circuit held that plain meaning is determined with reference to the statute's "text and structure." *Norfolk Dredging Co., Inc. v. United States,* 375 F.3d 1106, 1110 (Fed.Cir.2004) (citing *Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)).

If examination of the statute shows that "the language is clear and fits the case, the plain meaning of the statute generally will be regarded as conclusive." *Norfolk Dredging Co.,* 375 F.3d at 1110 (citations omitted). It has long been the rule in the United States Court of Appeals for the Federal Circuit that "[t]o overcome [a statute's] unambiguous lan-

guage, [a litigant] must show a clearly expressed congressional intent contrary to the text of the statute." *Campion v. Merit Systems Prot. Bd.*, 326 F.3d 1210, 1214 (Fed.Cir. 2003) (citing *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.")). Once plain meaning is ascertained, the court's analysis ends. *See Transcapital Leasing Assocs. v. United States*, 398 F.3d 1317, 1319–20 (Fed.Cir.2005) ("As in all statutory construction cases ... [t]he first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (citation omitted; alterations in original)).

Section 6229(a) is an exception to the general limitations period, set forth in 26 U.S.C. § 6501(a), for assessing a tax "attributable to" a partnership item. *See* 26 U.S.C. § 6229(a). Section 6229(a) specifies a minimum period:

> Except as otherwise provided in this section, *the period for assessing any tax* imposed by subtitle A with respect to any person *which is attributable to any partnership item* (or affected item) for a partnership taxable year *shall not expire before* the date which is 3 years after the later of—
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions).

*Id.* (emphasis added); *see also Grapevine Imports*, 71 Fed.Cl. at 328–31 ("Plaintiffs' interpretation, indeed, becomes even more tangled if one focuses on the pesky word 'not' in the statutory phrase—to adopt their position, one must take language indicating when the statute will *not* expire and elliptically treat it as defining when it *will* expire. Suffice it to say, the language of section 6229(a) is too clear to rearrange in this fashion."). Absent from 26 U.S.C. § 6229(a), however, is

any language that can be interpreted as establishing a maximum period within which the IRS must assess a tax attributable to a "partnership item." *See* WILLIAM S. MCKEE, WILLIAM F. NELSON & ROBERT L. WHITMIRE, FED. TAXATION OF PARTNERSHIPS & PARTNERS ¶ 9.07[6][b] (2006) ("Literally, § 6229(a) does not say that no taxes with respect to partnership items shall be assessed after the uniform assessment period described in § 6229(a) expires."); *see also* ARTHUR B. WILLIS, JOHN S. PENNELL & PHILIP F. POSTLEWAITE, PARTNERSHIP TAXATION ¶ 20.08[1] (2006) ("Section 6229(a) provides the general rule that the limitation period for the assessment of tax attributable to partnership items or affected items for a partnership taxable year 'shall not expire' before three years after the later of the date on which the partnership return was filed or the due date (without extensions) for filing the return. This language pointedly is different from the language in the general limitation statute that states that tax 'shall be assessed within 3 years' from the stated date. The effect of this provision, therefore, is to retain the normal three-year limitation period extended for partnership or affected items to at least three years (or more in some circumstances) after the filing of the partnership return. Consequently, the [Internal Revenue] Service has the longer of the period from the filing of the partner's return or the filing of the partnership return within which to assess tax with respect to partnership items and affected items." (footnotes omitted)).

Therefore, section 6229(a) does not establish an independent limitations period and must be read in context with section 6501(a), wherein the period for assessing taxes attributable to a "partnership item" is established. Stated differently, section 6229(a) modifies the general limitations period set forth in section 6501(a). The modified period that is triggered by section 6229(a) may expire before or after the maximum period set forth in section 6501.

Congress has employed "shall not expire before" language in other portions of the Internal Revenue Code where it has been construed as an extension of an otherwise applicable limitations period, rather than a

separate substitute limitations period. *See Grapevine Imports,* 71 Fed.Cl. at 331–32 n. 8–11 (providing a comprehensive survey of the Internal Revenue Code provisions with "shall not expire before" language and explaining that "[t]hese provisions have consistently been construed to be ameliorative, not prohibitive, that is, they do not represent exclusive statutes limiting the IRS, but rather minimum periods that Congress has prescribed to ensure that the IRS has sufficient time to perform certain tasks, including scrutinizing particular types of transactions").

In *Crnkovich v. United States,* 202 F.3d 1325 (Fed.Cir.2000) *(per curiam),*[6] the United States Court of Appeals for the Federal Circuit endorsed the same construction of section 6229(a):

> [26 U.S.C.] § 6501(a) unambiguously states that the IRS has only three years to make an assessment ("any tax … *shall be assessed* within 3 years" (emphasis added)). On the other hand, the three and one-year limitations periods in [26 U.S.C.] §§ 6229(a) and (f) do not unambiguously define an end date for making an assessment in that they instead use the phrase "shall not expire before." The failure in Section 6229 to define an end date leaves open the possibility that the applicable limitations period may expire *after* the periods set forth therein. Under this interpretation, the statute of limitations in Section 6501 would control if it expires after expiration of the three and one-year periods in Section 6229. Section 6229 would serve only to extend the assessment period under Section 6501. Section 6501(n) suggests that Section 6229 serves as an extension by providing: "For extension of period in case of partnership items (as defined in Section 6231(a)(3)), see Section 6229."

*Id.* at 1335 n. 7 (alterations and emphasis in original); *see also id.* at 1326 ("Because the Court of Federal Claims' analysis needs no

amplification, this court adopts as its own the opinion of the Court of Federal Claims to the extent that it relates to the Skinners' case, a copy of which is attached as an appendix.").

The United States Tax Court also extensively analyzed the relationship between section 6501(a) and section 6229(a) in *Rhone–Poulenc Surfactants & Specialties, L.P. v. Commissioner,* 114 T.C. 533, 2000 WL 863142 (2000), and concluded that:

> Section 6229 provides a *minimum* period of time for the assessment of any tax attributable to partnership items (or affected items) notwithstanding the period provided for in section 6501, which is ordinarily the *maximum* period for the assessment of any tax. The section 6229 minimum period may expire before or after the section 6501 maximum period.

*Id.* at 542.

The analysis of the United States Tax Court in *Rhone–Poulenc* subsequently was adopted by the United States Court of Appeals for the District of Columbia Circuit, in *Andantech L.L.C. v. Commissioner,* 331 F.3d 972, 976 (D.C.Cir.2003):

> [W]e first affirm the Tax Court's interpretation [in *Andantech]* of two sections of the Internal Revenue Code, 26 U.S.C. §§ 6501; 6229(a), to allow for an extension of the period in which the IRS may properly assess items attributable to a partnership. As the Tax Court explained, it had recently decided this exact issue in *Rhone–Poulenc* and relied on the analysis employed in that case when presented with the petitioners' claim here. In essence, the court reasoned that § 6501 provides a general period of limitations for assessing and collecting any tax imposed by the Code, and that § 6229(a) sets forth a minimum period for assessing any income tax with respect to any person that is attributable to any

---

**6.** At issue in *Crnkovich* was the effect of a settlement agreement on the limitations period for the IRS to file an assessment of tax liability, involving the application of 26 U.S.C. §§ 6229(a), 6229(f), and 6501(a). Section 6229(f) provides that if a "partnership item" becomes a nonpartnership item by reason of one of the events described in 26 U.S.C. § 6231(b), *e.g.,* a "settlement agreement" between the Secretary of the

Treasury or the Attorney General and a partner with respect to such items, "the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date which is 1 year after the date on which the items become nonpartnership items." 26 U.S.C. § 6229(f).

partnership item or affected item. Based on the language of the statute, the court held that § 6229(a) was not a separate limitations period, but simply set a minimum or allowed an extension of an assessment period, complementing the one set in § 6501.

\* \* \*

There is nothing about the court's reasoning in *Rhone–Poulenc,* nor in its reliance on that case here that gives us pause. The language of § 6501 plainly refers to all the assessments made pursuant to the chapter, and specifically notes that § 6229 may be used to extend the period in case of partnership items. Likewise, the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term "shall not expire" that the provision is intended to dictate a minimum period, but not an absolute restriction. Because we find the reasoning and analysis first applied by the Tax Court in *Rhone–Poulenc,* then followed in the present case reasonable, persuasive, and ultimately convincing, we affirm its decision.

*Id.* at 976–77 (internal citations omitted).

In this case, Plaintiffs argue that during the first sixteen years after the enactment of TEFRA, the IRS's "stated litigating position [was] that Section 6229 established a separate period of limitations, completely independent of Section 6501." Pls. Reply at 6, 25–26 ("The IRS remained true to this longstanding position until it belatedly issued the FPAA in *Rhone.* When faced with its failure to act on a timely basis there, the IRS abandoned the principles it previously expressed.") (citing IRS Litigation Guideline Memorandum TL–73 (Rev.) (Mar. 23, 1993); IRS Litigation Guideline Memorandum TL43 (Rev.) (Jan. 14, 1993); IRS Litigation Guideline Memorandum TL–81 (Rev.) (Mar. 7, 1991); IRS Litigation Guideline Memorandum TL–81 (Jan. 4, 1990)). The Government, however, correctly counters that the IRS Litigation Guideline Memoranda "are not precedent." *See* Gov't Reply at 15–16 (citing 26 U.S.C. § 6110(k) ("Unless the Sec-

retary otherwise establishes by regulations, a written determination may not be used or cited as precedent. The preceding sentence shall not apply to change the precedential status (if any) of written determinations with regard to taxes imposed by subtitle D of this title.")).

Second, Plaintiffs assert that the first seven words of section 6229(a)—*"Except as otherwise provided in this section"*—evidences Congress' intent to establish a self-contained statutory scheme for consistently resolving disputes "attributable to" partnership items at the entity level. *See* Pls. Reply at 15–16. This interpretation, however, is not consistent with the text of section 6229(a), establishing a minimum period for assessing taxes attributable to a partnership item.

Third, Plaintiffs contend that section 6229(b)(3) explicitly divorces 26 U.S.C. § 6229 from 26 U.S.C. § 6501, because an agreed upon extension of the section 6501(a) limitations period does not automatically extend section 6229(a). *See* Pls. Reply at 16. Plaintiffs are correct that section 6229(b)(3) limits the effect of an agreed upon section 6501(a) extension:

> Any [extension by] agreement under section 6501(c)(4) [7] shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items.

26 U.S.C. § 6229(b)(3) (footnote inserted). Plaintiffs, however, are not correct in relying on section 6229(b)(3) as evidence of an interrelation between section 6501 and section 6229 as a whole. Section 6229(b)(3) clarifies that an agreement, pursuant to section 6501(c)(4), to extend the section 6501(a) period applies to taxes attributable to "partnership items," only where an agreement explicitly states that it applies to such a tax. The default rule established by section 6229(b)(3) offers guidance for determining the scope of an agreement. That an agreed upon extension of the limitations period set forth in section 6501(a) does not affect the alternative minimum period set forth in section 6229(a)

---

**7.** Section 6501(c)(4) permits a taxpayer and the IRS to reach an agreement to extend the limita-

tions periods for the IRS to assess a tax. *See* 26 U.S.C. § 6501(c)(4).

certainly does not compel the conclusion that section 6229(a) is a separate limitations period. In fact, Plaintiffs' assertion that section 6501(a) does not apply to a tax attributable to partnership items would render section 6229(b)(3) superfluous, because there would be no danger of a taxpayer extending the limitations period beyond section 6501(a) to section 6229(a). *See Rhone–Poulenc,* 114 T.C. at 550 ("[The 26 U.S.C. § 6229(b)(3)] limitation on the scope of an agreement under section 6501(c)(4) is meaningless if, as petitioner argues, section 6501 has no application to the period of limitations for assessments attributable to partnership or affected items."); *see also Grapevine Imports,* 71 Fed.Cl. at 335–37 n. 18 (same).

In addition, Plaintiffs argue that, under the interpretation offered by the Government, section 6229(b) [8] "serve[s] no purpose because an extension agreement under Section 6501(c)(4) will keep the co-dependent limitations period open anyway." Pls. Reply at 18. An analysis of each provision of section 6229(b) follows.

Section 6501(c)(4) permits the IRS and a taxpayer to enter into an agreement to extend the limitations period for an assessment, but specifically limits such an agreement only to "particular items." *See* 26 U.S.C. § 6501(c)(4)(B) ("The Secretary shall notify the taxpayer of the taxpayer's right to refuse to extend the period of limitations, or to limit such extension to particular issues or to a particular period of time, on each occasion when the taxpayer is requested to provide such consent."); *see also Pursell v. Comm'r,* 38 T.C. 263, 278, 1962 WL 1080 (1962), *aff'd,*

315 F.2d 629 (3d Cir.1963) ("The statute[, 26 U.S.C. § 6501(c)(4),] refers only to time, and leaves the parties free to decide for themselves the terms on which an extension will be granted."). On the other hand, section 6229(b)(1)(A) permits the IRS and a partner to enter into an agreement extending the modified period, *i.e.,* with the alternative minimum floor, set forth in 26 U.S.C. § 6229(a), for taxes attributable to partnership items. Section 6229(b)(1)(B) permits the IRS and the "tax matters partner" to enter into an agreement extending the modified period, *i.e.,* with the alternative minimum period set forth in section 6229(a). Because an agreement, pursuant to section 6501(c)(4), may be limited to only "particular issues," *i.e.,* nonpartnership items, section 6229(b)(1) is not rendered superfluous. For these same reasons, section 6229(b)(2), which deals with the effect of a debtor in a bankruptcy proceeding on section 6229(b)(1)(B), is not rendered superfluous.

Section 6229(b)(3) is also not superfluous. As discussed above, an extension under section 6501(c)(4) operates to extend the period of limitations on assessments and collections only to those taxes that both the Secretary of the Treasury and the taxpayer explicitly agree to in writing. Section 6229(b)(3) imposes a default rule for purposes of determining whether an agreement encompasses assessments that are attributable to partnership items. Sections 6501(c)(4) and 6229(b)(3), therefore, operate in tandem to provide the rules for determining the scope of an agreement to extend the period for

---

**8.** Section 6229(b), entitled Extension by Agreement, provides:

(1) In general.—The period described in [section 6229](a) (including an extension period under this subsection) may be extended—

(A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and

(B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement), before the expiration of such period.

(2) Special rule with respect to debtors in title 11 cases.—Notwithstanding any other law or rule of law, if an agreement is entered into under paragraph (1)(B) and the agreement is signed by a person who would be the tax matters partner but for the fact that, at the time that the agreement is executed, the person is a debtor in a bankruptcy proceeding under title 11 of the United States Code, such agreement shall be binding on all partners in the partnership unless the Secretary has been notified of the bankruptcy proceeding in accordance with regulations prescribed by the Secretary.

(3) Coordination with section 6501(c)(4).—Any agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items.

26 U.S.C. § 6229(b).

assessment, *i.e.*, whether an agreement has been extended for "partnership items."

Plaintiffs point to numerous references to "the *period* ..." "described," "specified," or "prescribed" throughout section 6229 and the other provisions of TEFRA as evidence that Congress established a specific period of limitations for assessing a tax attributable to a partnership item. *See* Pls. Reply at 16–17, 21–22 (citing 26 U.S.C. §§ 6227(b), 6228(a)(2)(C), (a)(3)(C), 6229(b)(1), (b)(3), (d)) (emphasis added). Section 6229(a), however, does not establish an independent limitations period, but rather contemplates a modified limitations period for assessing taxes, *i.e.*, that period described in section 6501(a), and declares that this period "shall not expire before." 26 U.S.C. § 6229(a). References to "the period," read in context with the language of sections 6229(a) and 6501(a), describe only the limitations period set forth in section 6501(a), as modified by the minimum period established in section 6229(a).

Plaintiffs also contend that because Congress enumerated other exceptions within section 6229 "one can only conclude that Congress consciously excluded [26 U.S.C. § ] 6501 from the enumerated exceptions." Pls. Reply at 17–18 (citing 26 U.S.C. §§ 6229(b), (c), (d), (e), (f), (h)). The Government counters that "because [26 U.S.C.] § 6229 is a possible extension of limitations of [26 U.S.C.] § 6501 and incorporates the period specified in [26 U.S.C.] § 6501, [26 U.S.C.] § 6501 is not an exception to the statute and would not be singled out as such." Gov't Reply at 11–12. Plaintiffs further assert that most of the exceptions enumerated in section 6229 parallel exceptions in section 6501 and "could have been easily incorporated by substituting two or fewer words in each instance[,] ... hearld[ing] the manifest Congressional commitment to the special, separate, controlling, final set of limitations rules for 'partnership items.'" Pls. Reply at 18. The fact that Congress could have been more precise in drafting a statute, however, does not relieve the court from an obligation to construe a statute as written by Congress.

Finally, Plaintiffs argue that interpreting section 6229(a) as an extension of the period of limitations set forth in section 6501(a) would be inconsistent with other provisions of TEFRA. *See* Pls. Reply 20. Plaintiffs reason that, because 26 U.S.C. § 6227 "ties the period provided for filing refund claims relating to partnership items *against the IRS* ('Administrative Adjustment Request'), to the Section 6229 FPAA period relating to the IRS claims against the partnership[,] ... [t]he Government's ... view of Section 6229 ... creates an unjust and inconsistent clash between the period for favorable adjustments and the period for unfavorable adjustments—with partnership claims against the IRS cut off before IRS claims against the partnership." *Id.* at 20–21 (emphasis added) ("Under the plain meaning of these two cross-referenced *in pari materia* statutes, the matched periods in Sections 6227 and 6229 fit like a glove.").

Section 6227 provides, in relevant part:

(a) General rule.—A partner may file a request for an administrative adjustment of partnership items for any partnership taxable year at any time which is—

(1) *within 3 years after* the later of—

(A) the date on which the partnership return for such year is filed, or

(B) the last day for filing the partnership return for such year (determined without regard to extensions), and

(2) before the mailing to the tax matters partner of a notice of final partnership administrative adjustment with respect to such taxable year.

(b) Special rule in case of extension of period of limitations under section 6229.— The period prescribed by subsection (a)(1) for filing of a request for an administrative adjustment shall be extended—

(1) for the period within which an assessment may be made pursuant to an agreement (or any extension thereof) under section 6229(b), and

(2) for 6 months thereafter.

26 U.S.C. § 6227.

Therefore, section 6227 establishes a defined limitations period, whereas section 6229(a) modifies the limitations period set forth in section 6501(a). *Compare* 26 U.S.C. § 6227(a) ("A partner may file ... *within 3 years after* the later of ...." (emphasis add-

ed)), *with* 26 U.S.C. § 6229(a) ("[T]he period for assessing ... *shall not expire before* the date which is 3 years after the later of ..." (emphasis added)).[9] Given this significant distinction, Plaintiffs' argument is misplaced.

### 2. The Legislative History Does Not Contradict The Plain Language of 26 U.S.C. § 6229(a).

In the alternative, Plaintiffs argue that their interpretation of section 6229(a) is consistent with a clearly expressed congressional intent. *See* Pls. Reply at 33–36. In enacting TEFRA, "Congress sought to consolidate the previously fragmented, inconsistent treatment of partners through separate proceedings under varying limitations periods for each partner." Pls. Reply at 20; *see also id.* (" 'The principal purpose of TEFRA is to provide consistency and reduce duplication in the treatment of partnership items by requiring that they be determined in a single unified proceeding at the partnership, rather than the partner, level.' " (quoting *Slovacek v. United States,* 36 Fed.Cl. 250, 254 (1996))). Therefore, Plaintiffs suggest that, "[p]roperly applied, Section 6229 advances that consistency: it requires the Commissioner to act within the period when adjustments will impact *'all* partners alike.' " *See* Pls. Reply at 20 (citing *Weiner,* 389 F.3d at 158).

Plaintiffs urge the court to recognize and rely on three "important contemporaneous clues for construing Section 6229 [that] ... pave the way for Plaintiffs to prevail[:]" a statement by former Internal Revenue Commissioner Roscoe L. Egger, Jr., *see* THE TAX COMPLIANCE ACT OF 1982, & RELATED LEGISLATION: HEARING ON H.R. 6300 BEFORE THE HOUSE COMM. ON WAYS & MEANS, 97th Cong. 18 (1982) ("WAYS & MEANS COMM. HEARING"); the Conference Report on TEFRA ("the Conference Report"), *see* H.R. CONF. REP. No. 97–760, at 606 (1982), U.S.Code Cong. & Admin.News 1982, pp. 1190, 1378; and the Congressional Joint Committee on Taxation's Summary of the Revenue Provisions of H.R. 4961, *see* SUMMARY OF THE REVENUE PROVI-

SIONS OF H.R. 4961 (THE TAX EQUITY AND FISCAL RESPONSIBILITY ACT OF 1982), JOINT COMMITTEE ON TAXATION (Aug. 24, 1982) ("SUMMARY OF H.R. 4961"). *See* Pls. Reply at 33–35.

Like Judge Miller, the court does not consider former Commissioner Egger's statement to be probative of congressional intent. *See AD Global Fund,* 67 Fed.Cl. at 689–90 (2005) ("The court notes that, of the 455 pages of hearings regarding H.R. 6300, only the one sentence cited by plaintiff mentions the partnership statute of limitations provisions, and even that sentence was not uttered at the hearing, but, rather, *submitted subsequently* as part of the Commissioner's written testimony." (emphasis added)).

Plaintiffs' reliance on a statement in the Conference Report that "non-partnership items" will continue to be governed by the existing rules relating to administrative and judicial proceedings and statutes of limitations is equally unpersuasive. *See* H.R. CONF. REP. No. 97–760, at 606, 611 (1982), U.S.Code Cong. & Admin.News 1982, pp. 1190, 1383 (cited in Pls. Reply at 34–35). The court does not find this portion, or any other portion, of the Conference Report to evidence congressional intent to establish a stand alone limitations period for partnerships that is separate and distinct from section 6501(a).

Finally, Plaintiffs rely on the following statement as support for the proposition that the period of limitations for the IRS to adjust a "partnership item" is tied to the filing of the partnership return:

> The period of limitations for assessments attributable to partnership items generally is the later of 3 years from the filing of the partnership return or the last day for filing such return, extended by the period during which suit may be filed, by the pendency of court proceedings, and for one year thereafter.

---

**9.** Interestingly, section 6227(a) contains language that is identical to section 6501(a)—"within 3 years after"—which further evinces that Congress understood how to establish an independent limitations period. *Compare* 26 U.S.C.

§ 6227(a) ("A partner may file ... *within 3 years after* the later of ...." (emphasis added)), *with* 26 U.S.C. § 6501(a) ("[T]he amount of any tax imposed ... shall be assessed *within 3 years after* ...." (emphasis added)).

SUMMARY OF H.R. 4961, at 61 (cited in Pls. Reply 35). This observation only states that the period for assessing taxes attributable to partnership items *"generally* is the later of 3 years from the filing of the partnership return[.]" SUMMARY OF H.R. 4961, at 61 (emphasis added). Moreover, this statement has no relevance to section 6501(a) at issue here.

The court, therefore, has determined that there is no "clearly expressed congressional intent [that is] contrary to the text" of 26 U.S.C. § 6511(d)(2)(A). *See Campion,* 326 F.3d at 1214 (citing *Garcia,* 469 U.S. at 75, 105 S.Ct. 479); *see also Zedner v. United States,* —— U.S. ——, 126 S.Ct. 1976, 1991, 164 L.Ed.2d 749 (2006) (Scalia, J. concurring) ("[T]he use of legislative history is illegitimate and ill advised in the interpretation of any statute[,] ... and especially a statute that is clear on its face[.]"). Section 6229(a) establishes a minimum period that modifies the general limitations period, set forth in section 6501(a), and is not an independent limitations period. Accordingly, the court has determined that section 6229(a) sets forth an alternative minimum period within which the IRS may issue a FPAA, as a prerequisite for assessing a tax attributable to a "partnership item."

## IV. CONCLUSION.

Plaintiffs' Motion for Summary Judgment is denied and the Government's Cross–Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**